UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SHERRY ARGOV,

        Plaintiff,

v.

EDITORIAL PLANETA MEXICANA, S.A. DE C.V.
GRUPO EDITORIAL PLANETA S.A.I.C.,

        Defendants.

C.A. No. 11-11677

## COMPLAINT

The plaintiff, Sherry Argov ("Argov" or "author"), files this complaint for damages and injunctive relief against the defendant companies (hereinafter "Planeta" or "Grupo Planeta"), for breach of contract and copyright infringement arising from their publication and sale of the Spanish version of her internationally best-selling books, *Why Men Love Bitches* (hereinafter "book") and *Why Men Marry Bitches* (hereinafter "sequel"). Planeta has pirated and profited from Argov's copyrighted work, after failing and refusing to compensate Argov for royalties; assigned the book to previously unknown entities without the author's permission and in violation of contract and copyright law; intentionally deceived the author by paying royalties based on lower paperback prices when higher priced hardcover copies were sold; sold electronic versions of the books without a license; willfully and knowingly concealed publication and sales of different editions of the books; registered the copyright in its own name in violation of a contract in which t the author expressly reserved the right to the copyright

in her own name; and, intentionally interfered with the author's new contract with a Massachusetts publisher after the term of Planeta's contract expired. Through these multiple acts, Planeta has engaged in unfair and deceptive business practices in violation of Massachusetts General Laws Chapter 93A. Argov has been under-paid in excess of one million dollars, based on prior reports, which should be trebled in accordance with Chapter 93A. Argov is also entitled to a declaratory judgment declaring that the contract has been terminated, and injunctive relief to prevent the defendants from further infringement upon Argov's copyrights.

## PARTIES

1. The plaintiff Argov is an individual who resides in Los Angeles, California.

2. The defendant, Editorial Planeta Mexicana, S.A. De C.V., is a foreign publishing entity transacting business in the Commonwealth of Massachusetts.

3. The defendant, Grupo Planeta, is a foreign publishing entity transacting business in the Commonwealth of Massachusetts, and whose subsidiaries include Editorial Planeta Mexicana, Editorial Diana, Editorial Planeta Colombiana, and Grupo Editorial Planeta in Argentina (hereinafter referred to collectively as either "Grupo Planeta" or "Editorial Diana").

## JURISDICTION AND VENUE

4. Jurisdiction is conferred by diversity of citizenship. 28 U.S.C. § 1332. The Court also has subject matter jurisdiction under the United States Copyright Act. 17 U.S.C. § 501, 28 U.S.C. § 1338.

5. Personal jurisdiction and venue are proper in Massachusetts under the Massachusetts Long-Arm Statute, G.L. c. 223A, due to, among other things, the Massachusetts choice of law provisions which the parties expressly agreed would govern their applicable contracts. (See Agreement, § 23, Exhibit A).

6. Personal jurisdiction and venue are also proper in Massachusetts as it is the location of Argov's publisher, Adams Media, which negotiated the contract for the Spanish version of the contract with Planeta in 2004, and is party to a new contract with Argov to resume publishing the Spanish version.

7. Each Spanish edition of the book published by the defendants acknowledges on the copyright page that it is published by agreement with Argov's publisher located in Avon, Massachusetts:

> Publicado mediante acuerdo con Adams Media, perteneciente a F+W Publications Company, 57 Littlefield Street, Avon, MA 02300, Estados Unidos, www.adamsmedia.com.

As translated in English, the copyright page states:

> Published by agreement with Adams Media, belonging to F+W Publications Company, 57 Littlefield Street, Avon, MA 02300 United States. www.adamsmedia.com.

(See e.g., copyright page, Exhibit B).

8. Pursuant to the agreement that Planeta entered with Adams Media in 2004, Planeta sent all contracts, amendments, royalty statements, and payments arising from its sales of the book directly to Adams Media in Avon, Massachusetts. These continual communications and business transactions, which are encompassed in this dispute, took place from 2004 to 2009.

9.   In communications with the author, Planeta's agent confirmed that its accounting had been sent "directly to Adams" in Massachusetts by registered mail in 2006 and 2007; and that the 2008 accounting had been sent "directly to Adams" in Massachusetts by Federal Express. (See emails and royalty statements collectively marked "Exhibit C.")

10.  In 2009, Argov was assigned the right, title and interest in the contact between Adams Media and Planeta. This assignment included the right to collect delinquent and past-due royalties from Planeta, which are being sought in this lawsuit.

11.  After Adams Media assigned the contract to Argov, a new edition of the book with a new chapter was negotiated through Argov's Massachusetts counsel with Grupo Planeta. Again, the new contract contained a Massachusetts choice of law provision.

12.  In August 2011, after Argov negotiated with Adams Media to begin publishing the Spanish version upon expiration of Planeta's contract on September 1, 2011, Planeta again sent emails to Argov's publisher, Adams Media, claiming ownership of Argov's copyright and demanding that it cease and desist from exploiting intellectual property owned by Argov. (See emails, "Exhibit D."). Adams Media, which is a party-in-interest to these proceedings, is located in Massachusetts.

## FACTS

13.  On or about October 11, 2001, Argov entered into a written contract with Adams Media, a division of F&W Publications, Inc., to write, publish and sell her book *Why Men Love Bitches*. Adams Media is located in Avon, Massachusetts. The contract continues in existence to this date.

14. On or about June 21, 2004, Adams Media entered into a written Agreement with Editorial Diana, pursuant to which Adams Media granted Editorial Diana an exclusive license to produce and publish the first book in the Spanish language in Latin America. (See Agreement, ¶ 1) (Exhibit A).

15. On or around June 23, 2006, Simon & Schuster entered into a written Agreement with Editorial Diana, pursuant to which Simon & Schuster granted Editorial Diana an exclusive license to produce and publish Argov's sequel, *Why Men Marry Bitches,* in the Spanish language in Latin America.

16. Editorial Diana began printing and selling the book in the Spanish language in October 2005, and began selling the sequel in 2007. Both books became instant bestsellers.

17. The books were adapted into a highly successful theater play, which has since been sold-out in over 100 cities. The first book was ranked #1 in Mexico in 2006, and remained a bestseller through 2011. Although the publisher corresponded with the author, it concealed that her book was a #1 bestseller in Mexico and Puerto Rico, and concealed from her the success of the book.

18. On April 2, 2007, the book contracts were amended to extend the Planeta's sales territory to include the United States, Canada and Puerto Rico.

19. On December 9, 2008, Adams Media notified Editorial Diana in writing that all rights under the contract had been assigned to Argov, effective January 1, 2009, and that all royalty payments were to be sent to Argov.

20. In February 2010, Simon & Schuster notified Editorial Diana in writing that all rights under the agreement for the sequel should be sent to Argov. (Copies of both letters are attached hereto as "Exhibit E").

21. Editorial Diana was acquired by Grupo Planeta in 2008, a large public conglomerate that serves 25 countries in Latin America and Europe.

22. Editorial Diana improperly assigned the contract to Grupo Planeta, which then secretly assigned the rights again to several publishers in other countries. By the terms of its contract, Editorial Diana could not transfer the rights without permission, yet it did not obtain written or verbal permission from the author or her publisher Adams Media.

23. By the terms of the Agreement, Editorial Diana/Planeta is obligated to pay Argov a royalty of 7% of the retail price of each book sold, and to account to Argov for the sales of both books within three months following December 31st of each year. (Agreement, ¶ 6, 9) (Exhibit A).

24. Editorial Diana has failed and refused to account properly for royalties owed to the author as required by the Agreement.

25. By the terms of the Agreement, Editorial Diana is obligated to send to Argov all editions of the book immediately upon its publication, including hardcover editions. (Agreement, ¶ 10) (Exhibit A). Editorial Diana failed to do this, and instead concealed the hardcover editions and did not account to the author for higher priced hardcover editions when calculating royalties, until they were discovered online by Argov.

26. Additionally, Editorial Diana did not disclose multiple paperback editions of the books that it had printed in several countries.

27.  Without notifying the author, Grupo Planeta transferred book rights to publishers in Chile, Argentina, and Colombia, who published different editions (with different ISBN's/cover artwork). Until one edition was found by Argov on the internet, Editorial Diana had concealed the transfer to publishers in several countries for years.

28.  According to ISBN numbers, there are many editions and formats of Argov's work which did not appear on the royalty statements by price, edition, format or ISBN. Planeta, which services 25 countries, thus far has published many ISBN numbers and editions with various price points and book jacket covers, including but not limited to:

> **DOCUMENTED SPANISH EDITIONS (BY ISBN )**
> ISBN: 978-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-5
> ISBN: 978-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-2
> ISBN: 978-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-0
> ISBN: 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-8
> ISBN: 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-7
> ISBN: 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-8
> ISBN: 978-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-3
> ISBN: 978-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-8
> ISBN: 978-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-2
> ISBN: 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-0
> ISBN: 978-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-6
> ISBN: 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-8
> ISBN: 978-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-5
> ISBN: 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-5
> ISBN: 978-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-2
> ISBN: 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-X
> ISBN: 978-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-0
> ISBN: 968-134-3107
> ISBN: 978-968-934-310-1
> ISBN: 978-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-1
> ISBN: 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-8

From 2005 to 2009, Grupo Planeta omitted any details on the royalty statements that would have disclosed the proliferation of countless unauthorized editions of her book.

29. Although the contract expressly excluded electronic or "e-book" versions, Grupo Planeta published unauthorized e-book versions. Both e-versions and traditional book editions are still being sold despite that the contract for the book terminated on September 1, 2011. Grupo Planeta failed to report royalties or pay for all unauthorized e-book sales on each accounting from the inception of its contract. (See Exhibit F.)

30. Before the rights were assigned to Argov in July 2008, Editorial Diana wrote an email to Argov confirming it had printed 380,000 copies of her first book, and over 100,000 of her sequel (one year after its release). At the time, Editorial Diana did not realize Argov would be the payee, as rights had not yet been assigned to her for both books by her U.S. publishers.

31. After the rights were assigned, Argov and her counsel repeatedly asked for printing invoices to verify the number of books printed from the beginning of the contract. Editorial Diana sent printing invoices for 2007 and 2008 totaling 380,000. When asked where the invoices were for 2005 and 2006 (the year that Argov's book was #1 in the country) Editorial Diana stated that it could not find the first printing invoice, which is usually the largest print run.

32. On the next accounting report, Grupo Planeta reported that it printed the sequel once that year, in the amount of 3,000 books for all territories. This was false. There were more ISBN numbers registered (documenting new versions or editions) than there were printings reported.

33. By the terms of the Agreement, Grupo Planeta was required to maintain the copyright of the book including its translation in the author's name. (Agreement, ¶ 13) (Exhibit A). Contrary to the terms of the Agreement, however, Editorial Diana

registered the copyright translation in its own name rather than in the name of the author, and Grupo Planeta authorized their subsidiaries, who were pirating her book, to do the same.

34. By the terms of the Agreement, Editorial Diana was prohibited from assuming any right, title and interest in the copyright. The contract provided that permission to publish the book was expressly conditioned upon the printing of a correct copyright notice in every copy of the work, and was the "essence of the agreement." Argov reserved all rights to the copyright "including in the translation." (Agreement, ¶ 13) (Exhibit A).

35. Neither Editorial Diana, Grupo Planeta, nor any of their subsidiaries, divisions or affiliates were granted the right to sell Argov's books in e-book format, yet they sold the e-version. (Agreement, ¶ 1, Amendment) (Exhibit A). Grupo Planeta never disclosed, nor paid royalties for unauthorized e-book versions and omitted this activity on each and every royalty accounting.

36. In September 2009, Editorial Diana admitted it had transferred rights to other publishers in several Latin America countries, but only after Argov found an unauthorized edition being sold on the internet.

37. For five years, editors at Editorial Diana and President Jose Calafell denied there was ever a hardcover edition of the book. When the link to the hardcover book on Ebay was forwarded to President Jose Calafell, he then stated there had been only one printing of the hardcover edition, for one shipment to Costco. This too was false, as there were multiple ISBN numbers for several hardcover editions. When confronted again with the misrepresentations and concealment, Planeta's President Jose Calafell and CEO Jose

Badeness admitted that Planeta had under-paid the author for the first book in the amount of $73,738 (USD), and was forced to pay the author this amount.

38. In September 2009, two-year licensing agreements were entered with the Planeta's subsidiaries in Mexico, Chile, Argentina, and Colombia which had already been publishing unauthorized, pirated versions for years.

39. The new agreements required each publisher to send separate statements and printing invoices for each printing of Ms. Argov's book, and to pay the author 10% of the book cover price.

40. In or about April 2010, shortly after the sequel was assigned to Argov, Planeta sent the author the annual accounting for her sequel. Even after admitting they underpaid her for hardcover editions, Planeta omitted the hardcover and e-versions on the statements once again. Additionally, the Planeta entities did not account "by country" which they were required to do, and did not produce all printing invoices from the manufacturer to verify units printed, which they were required to do. Planeta also failed to report all e-book sales from 2004-2011.

41. On September 1, 2011, the Planeta's contract for the Spanish translation of the book expired by its terms. In addition to ignoring the author's requests for accountings, Planeta has continued to distribute and sell the books, including the unauthorized e-book versions, beyond the date of expiration, in flagrant violation of the author's copyright.

42. Prior to the expiration of the Planeta contract, the author entered a new contract with Adams Media, her Massachusetts publisher, to publish and sell the Spanish translation of the book once the contract with Planeta expired. On or about August 13,

2011, Planeta intentionally interfered with the contract by sending emails to Argov's publisher in Massachusetts claiming a right and interest in the copyright, and by demanding that they refrain from using the title and/or content of the book. This email exchange is attached and marked "Exhibit F." Pursuant to the applicable contracts, Argov owns the copyright, including in the translation. (Agreement, ¶ 13) (Exhibit ).

## COUNT I
### (Breach of Contract)

43. The plaintiff repeats each and every allegation contained in the preceding paragraphs as if fully set forth herein.

44. As set forth above, the defendants entered into written contracts which were assigned to the plaintiff, and the plaintiff has fully performed her obligations under the contracts.

45. As set forth above, the defendants breached the contracts.

46. As a result of the defendants' breaches, the plaintiff has suffered damages.

## COUNT II
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

47. The plaintiff repeats each and every allegation contained in the preceding paragraphs as if fully set forth herein.

48. As set forth above, the defendants entered into written contracts which were assigned to the plaintiff, which contained therein an implied covenant on the part of the parties of good faith and fair dealing.

49. The defendants breached the implied covenant of good faith and fair dealing owed to plaintiff by, among other things, refusing to pay her royalties, assigning it without authorization, and concealing facts and providing false statements to the plaintiff.

50. As a result of the defendants' breaches of the implied covenant of good faith and fair dealing, the plaintiff has suffered damages.

## COUNT III
### (Fraud)

51. The plaintiff repeats each and every allegation contained in the preceding paragraphs as if fully set forth herein.

52. As set forth above, the defendants (i) intentionally and with knowledge misrepresented material facts to the plaintiff in order to induce the plaintiff to believe that her income from book royalties was less than what it was and that less books were sold than actually sold, (ii) intentionally and with knowledge misrepresented that they had obtained proper authorization to assign rights to other publishers when it had not, and (iii) intentionally and with knowledge misrepresented that they did not publish hard cover copies of the book, when they had.

53. The plaintiff relied upon the misrepresentations to her detriment and has suffered damages from defendants' fraud, which continues to date.

## COUNT IV
### (Conversion)

54. The plaintiff repeats each and every allegation contained in the preceding paragraphs as if fully set forth herein.

55.   As set forth above, the defendants intentionally or wrongfully exercised acts of ownership, control or dominion over the personal property of the plaintiff which the defendants had no right of possession.

56.   As a result, the plaintiff has suffered damages.

## COUNT V
### (Intentional Interference with Contractual/Advantageous Relations)

57.   The plaintiff repeats each and every allegation contained in the preceding paragraphs as if fully set forth herein.

58.   As set forth above, the defendants intentionally or wrongfully exercised acts of ownership, control or dominion over the copyright of the plaintiff which the defendants had no right of possession, then sent emails to the author's Massachusetts publisher, claiming ownership of the copyright. In doing so, they intentionally interfered with her contracts using improper motive and means.

59.   As a result, the plaintiff has suffered damages.

## COUNT VI
### (Declaratory Judgment)

60.   The plaintiff repeats each and every allegation contained in the preceding paragraphs as if fully set forth herein.

61.   As set forth above, an actual controversy has arisen between the parties to this action as to the termination of the contract, and a determination of the rights, duties and status of the parties pursuant to such termination is warranted in accordance with Mass. Gen. Laws Chapter 231A.

## COUNT VII
### (Violations of Mass. Gen. Laws Chapter 93A)

62. The plaintiff repeats each and every allegation contained in the preceding paragraphs as if fully set forth herein.

63. At all times relevant, the defendants were acting in a business context with regard to the plaintiff and the publishing, marketing, selling and accounting for sales of her book.

64. As set forth above, the defendants committed unfair and deceptive trade practices with that are prohibited under the provisions of Mass. Gen. Laws Chapter 93A and the regulations of the Attorney General of the Commonwealth.

65. The defendants' acts in this regard were willful and knowing.

66. As a result, the plaintiff is entitled to recover treble her damages, along with attorney's fees, interest and costs.

## COUNT VIII
### (Copyright Infringement)

67. The plaintiff repeats each and every allegation contained in the preceding paragraphs as if fully set forth herein.

68. The plaintiff is the owner of valid copyrights for Why Men Love Bitches and Why Men Marry Bitches and all foreign translations of said books.

69. The defendants have registered the copyright in their own name, and copied and sold the plaintiff's copyrighted material without license or authorization. 17 U.S.C. § 501 et seq.

70. As a result, the plaintiff has suffered damages and is entitled to all remedies afforded by the United States Copyright Act.

WHEREFORE, the plaintiff respectfully requests that this Court:

1. Enter an order enjoining the defendants from further publication and sale of the author's two books anywhere in the world;

2. Enter a judgment declaring that all Agreements between the parties are terminated immediately, and that the author owns all copyrights in her two books;

3. Enter an award of damages in favor of the plaintiff, and against the defendants, in an amount to be determined at trial;

4. Enter a finding that the defendants have committed willful and knowing violations of G.L. c. 93A, resulting in treble damages, attorneys fees and costs in favor of the plaintiff.

### Jury Demand

The Plaintiff demands a jury trial upon all claims so triable.

Respectfully submitted,

SHERRY ARGOV,

By her attorneys,

/s/ Edward V. Colbert
Edward V. Colbert III (BBO # 566187)
Gabriel T. Dym (BBO # 667083)
Looney & Grossman LLP
101 Arch Street
Boston, MA 02110
(617) 951-2800
ecolbert@lgllp.com
gdym@lgllp.com

4820-2959-2074, v. 1